861 F.2d 232
 57 USLW 2358
 UNITED STATES of America, Plaintiff-Appellee,
v.
TAX LOT 1500, TOWNSHIP 38 SOUTH, RANGE 2 EAST, SECTION 127,
FURTHER IDENTIFIED AS 300 COVE ROAD, ASHLAND,
JACKSON, COUNTY, OREGON, Defendant-Appellant,
Kenneth M. Jaffee, Claimant-Appellant.
 No. 87-4011.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 12, 1988.
Decided Nov. 9, 1988.
 
 Michael L. Williams, Williams and Troutwine, Portland, Or., for defendant-appellant.
 Jeffrey J. Kent, Asst. U.S. Atty., Eugene, Or., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before GOODWIN, Chief Judge, ALARCON and FERGUSON, Circuit Judges.
 GOODWIN, Chief Judge:
 
 
 1
 The owner of a dwelling house and surrounding land appeals a summary judgment forfeiting his land and improvements because they were used in the production of marijuana. The government brought civil forfeiture proceedings after Jaffee was convicted in state court of "manufacturing" marijuana.
 
 
 2
 Jaffee challenges the forfeiture on both proportionality and due process grounds. There are a number of disputed questions of fact. The question before us, however, is whether they are "material." There is no dispute that Jaffee was engaged in the type of horticulture that is forbidden by law.
 
 
 3
 Viewing the facts in the light most favorable to Jaffee, the record discloses that on August 6, 1985, Jaffee was the sole owner of real property located in Jackson County, Oregon, identified as 300 Cove Road, Ashland, Oregon. Jaffee says the value of the house and land at the time of seizure was $94,810. On August 6, state law enforcement officers executed a search warrant for this property. They found 143 marijuana plants. Most of the plants were young; many were not more than an inch high. They were worth less than $1,000. The government brief states that the plants were of the sinsemilla variety. If so, they could be worth between $500,000 and $1,000,000 when mature. Jaffee denies that the plants had any substantial value. The plants were growing only on the deck over the garage and in a small (2 1/2' by 5') garden adjacent to the house; the total area of ground space used for growing marijuana was less than 200 square feet.
 
 
 4
 Jaffee argues that the eighth amendment's proportionality of punishment requirement is applicable to forfeitures under 21 U.S.C.A. Sec. 881(a)(7) (West 1981 & Supp.1988).[1] See United States v. Busher, 817 F.2d 1409, 1413-16 (9th Cir.1987). Busher held that the proportionality requirement announced in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), was applicable to forfeiture cases. However, as the government points out, the Busher forfeiture was brought under RICO, 21 U.S.C.A. Sec. 853 (West Supp.1988), a criminal forfeiture provision. This appeal challenges a civil forfeiture.
 
 
 5
 We have found no case holding the eighth amendment applicable to civil forfeiture actions. The text of the eighth amendment "suggests an intention to limit the power of those entrusted with the criminal-law function of government." Ingraham v. Wright, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977).
 
 
 6
 Jaffee argues nonetheless that the practical punitive effects of civil forfeiture are indistinguishable from criminal fines. He relies in part on One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). In that case, the Pennsylvania courts had held that the exclusionary rule was not applicable in a civil forfeiture case. The Supreme Court disagreed, stating that "a forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." Id. at 700, 85 S.Ct. at 1250.
 
 
 7
 Relying on this language in Plymouth Sedan, the Second Circuit noted in its analysis of the eighth amendment implications of RICO forfeiture (one of the first criminal forfeiture statutes) that "[a]t least for this purpose, there is no substantial difference between an in rem proceeding and a forfeiture proceeding brought directly against the owner." United States v. Huber, 603 F.2d 387, 397 (2d Cir.1979), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (RICO criminal forfeiture statute which keys forfeiture to the magnitude of a defendant's criminal enterprise, does not violate eighth amendment's proportionality requirement).
 
 
 8
 The government counters the criminal case analyses by pointing to Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 680-83, 94 S.Ct. 2080, 2090-92, 40 L.Ed.2d 452 (1974). There, the Court rejected a challenge to a Puerto Rico statute modeled after Sec. 881(a). The owner of the yacht claimed that the yacht could not be forfeited based on the actions of the lessee, when the owner was "neither involved in nor aware of the act of the lessee which resulted in the forfeiture." Id. at 664, 94 S.Ct. at 2082. The Court analyzed the history of civil forfeiture actions from biblical times through the early English common law. Civil forfeiture actions were historically characterized as proceedings in rem against the objects which had offended the King. These objects were treated as being guilty themselves. See id. at 680-83, 94 S.Ct. at 2090-92; see also United States v. $39,000 in Canadian Currency, 801 F.2d 1210, 1218 (10th Cir.1986). Thus, the Court noted that "the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense." Calero-Toledo, 416 U.S. at 683, 94 S.Ct. at 2092; The Palmyra, 25 U.S. (12 Wheat.) 1, 14-15, 6 L.Ed. 531 (1827) ("the proceeding in rem stands independent of, and wholly unaffected by, any criminal proceeding in personam ").
 
 
 9
 It should be noted, however, that Sec. 881(a)(7) exempts from forfeiture property used for illicit purposes without the knowledge or consent of the owner. 21 U.S.C. Sec. 881(a)(7); see also 21 U.S.C. Sec. 881(a)(4)(A) (exempting from forfeiture conveyances used for transporting controlled substances when the owner was not party or privy to the violation of the controlled substances laws). Thus, Congress has to some extent protected innocent owners.
 
 
 10
 The government argues that if the owner's innocence is not a defense to an in rem forfeiture, it makes no sense to apply the eighth amendment's proportionality review, because the proportionality " 'inquiry focuses on whether a person deserves such punishment.' " Busher, 817 F.2d at 1415 n. 11 (quoting Rummel v. Estelle, 445 U.S. 263, 288, 100 S.Ct. 1133, 1146, 63 L.Ed.2d 382 (1980) (Powell, J. dissenting)). This argument is persuasive. If the constitution allows in rem forfeiture to be visited upon innocent owners who were imprudent in choosing bailees, the constitution hardly requires proportionality review of forfeitures imposed on the guilty who assumed the risk of forfeiture.
 
 
 11
 Critics of the law may well ask why the law requires proportionality review for forfeitures when the government proceeds in personam, but not when the government proceeds in rem. The two proceedings are functionally equivalent (except perhaps when the res is contraband) and differ only in form. But the historical development of the two actions has led courts to continue the fiction that in rem proceedings are against the res, rather than against the individual, even when the result is to create new members of the homeless. Given the Supreme Court's willingness to underwrite this historical fiction, see Calero-Toledo, 416 U.S. 663, 94 S.Ct. 2080, it is difficult to deny the government's conclusion that the eighth amendment's proportionality requirement does not apply. "The life of the law has not been logic: it has been experience." O.W. Holmes, The Common Law 1 (1881).
 
 
 12
 Because this is a civil forfeiture, the Busher proportionality analysis was not necessary. We hold that there was no eighth amendment violation in forfeiting the property used to produce the contraband.
 
 
 13
 The next question is whether the court erred in failing to exercise judicial restraint to limit the forfeiture to the value of the portion of the property actually used to grow the marijuana. Jaffee urges this court to impose judicial restraint upon the district court, and to limit forfeiture to the small part of the land actually used for marijuana cultivation. Jaffee asserts that under a similar provision, 26 U.S.C. Sec. 5615(3)(C) (1982), which directs civil forfeiture of illegal distilling operations, courts have applied such restraint. On its face that statute, like Sec. 881(a)(7), allowed forfeiture of the entire lot or tract of land. However, courts found that literal application of the language
 
 
 14
 would not only be harsh but unequal--for it would make the amount of the forfeiture depend, not on the value of the distillery, ... but upon the accidental circumstance that the illicit distiller happened to own a large tract, on the corner of which a still ... was erected.
 
 
 15
 United States v. Certain Piece of Land, 25 F.Cas. 366, 366-67 (D.Cal.1870). Accord United States v. About 151.682 Acres of Land, 99 F.2d 716 (7th Cir.1938).
 
 
 16
 The government contends that these older cases were implicitly rejected in United States v. Littlefield, 821 F.2d 1365, 1366-68 (9th Cir.1987). Littlefield was a criminal forfeiture case that allowed the criminal forfeiture provisions to reach the realty "in its entirety," and stated that the civil forfeiture provisions did the same.[2] However, as the government elsewhere argues, criminal forfeiture cases have questionable precedential value in civil forfeiture cases, given the historical distinction between the two types of actions. The government thus fails to note that Littlefield's refusal to exercise judicial restraint was premised in part on the availability of eighth amendment proportionality review to preclude exceedingly harsh results. As we have decided that eighth amendment proportionality review is not appropriate in in rem actions, we must review Jaffee's claim that judicial restraint should be exercised.
 
 
 17
 The district court concluded that such restraint was inappropriate in this case. We agree. Jaffee chose to conduct his small farming operations on his own land which was subject to the risk of forfeiture. Some of his colleagues in the same business planted their crops on land already owned by the United States and managed somewhat randomly by various federal agencies. These growers faced the constant risk of losing their crop, but not that of losing their land. Jaffee chose to keep his crop close to home. At the time of forfeiture, Jaffee had 143 plants growing over his garage and in his garden. The district court correctly concluded that this was not a case for judicial restraint. Given this extensive operation, we find no need to go into the relative values of crop and real property.[3]
 
 
 18
 Finally, Jaffee challenges the procedures by which property may be forfeited. Under 21 U.S.C.A. Sec. 881(b) (West 1981 & Supp.1988), any property subject to civil forfeiture under that subchapter "may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims." Property may be seized without such process when "the Attorney General has probable cause to believe that the property is subject to forfeiture under this subchapter." 21 U.S.C.A. Sec. 881(b)(4) (West 1981 & Supp.1988).
 
 
 19
 As Jaffee points out, on their face these provisions allow forfeiture without prior judicial review. At least one court has held that, absent exigent circumstances, the constitution forbids seizure of real property under Sec. 881 without prior judicial review. See United States v. Certain Real Estate Property, 612 F.Supp. 1492, 1498 (S.D.Fla.1985). However, in this case the government sought prior approval from a magistrate before seizing the property. This precautionary prior judicial review sufficiently cured any possible constitutional defect. Thus, we need not consider Jaffee's facial challenge to Sec. 881. See United States v. A Parcel of Real Property, 636 F.Supp. 142, 145-46 (N.D.Ill.1986). See also Certain Real Estate Property, 612 F.Supp. at 1497 (stating that due process would be satisfied if "a judicial officer has reviewed the complaint in an ex parte proceeding" prior to seizure).
 
 
 20
 AFFIRMED.
 
 FERGUSON, Circuit Judge, concurring:
 
 21
 I concur in Judge Goodwin's opinion, but write separately on an issue presented only at oral argument.
 
 
 22
 Section 881(a)(7) permits forfeitures of [a]ll real property ... used, or intended to be used [for a violation of Title 21]." 21 U.S.C. Sec. 881(a)(7) (emphasis added). Yet when the government commenced federal forfeiture proceedings against Jaffee's property on October 16, 1985, Jaffee was no longer growing marijuana on his land; state authorities had previously seized the plants in August while executing a search warrant. Nor does any evidence suggest that Jaffee intended to use his property in the future for marijuana cultivation.
 
 
 23
 It appears to me, however, that federal forfeiture proceedings are timely commenced if initiated shortly after filing, but prior to termination, of state court criminal proceedings. Since Oregon criminal proceedings were still pending against Jaffee at the time of the federal forfeiture action in October, the forfeiture of Jaffee's property finds support in section 881(a)(7).
 
 
 
 [1]
 Section 881(a)(7) provides:
 a) The following shall be subject to forfeiture to the United States and no property rights shall exist in them:
 * * *
 (7) All real property, including any right, title, and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 [2]
 In Littlefield we followed Busher to hold that the district court was required to determine that the forfeiture of the entire property was not so disproportionate as to violate the Eighth Amendment
 
 
 [3]
 Because we find a comparison of the relative values of the crop and real property unnecessary, we need not decide whether the government's estimate of value was based on inadmissible hearsay