UNITED STATES of America, Plaintiff,

v.

**REAL PROPERTY AND RESIDENCE AT 31 N.W. 136TH COURT, MIAMI, FLORIDA, with all appurtenances thereto and all improvements thereon, Defendant.**

No. 87–1890–CIV.

United States District Court,
S.D. Florida.

April 18, 1989.

Carole Fernandez, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Bonnie Phillips del Corral, Miami, Fla., for defendant.

## MEMORANDUM ORDER

SCOTT, District Judge.

The United States Government seeks forfeiture of the Defendant Real Property, a residence including its improvements, located at 31 N.W. 136 Court, Miami, Florida, pursuant to 21 U.S.C. § 881(a)(7). The sole issue before the Court is whether the Government has sustained its burden in demonstrating that a "substantial connection" existed between the residence and Claimant Miguel Diaz' illicit drug transaction. Claimant does not dispute that Metro–Dade Detectives Williams and O'Keefe seized ten kilograms of cocaine from the circular driveway located on his property. After extensive discovery and a well-tried non-jury trial, the Court enters these findings of fact and conclusions of law.

### I.

### FINDINGS OF FACT

A. *The Underlying Investigation*

The efforts of local and federal law enforcement agents culminated in Claimant's guilty plea [1] and the instant forfeiture ac-

---

1. Claimant has pled guilty to violating Title 21    U.S.C. § 841(a)(1), conspiring to possess with

tion. The successful investigation was carried out jointly by the Metro–Dade Homicide, Narcotics and Major Crimes Divisions, along with the Drug Enforcement Administration. Metro–Dade launched a homicide investigation which targeted the "Placencia Family" (Family) as the lead suspects.[2] During the course of its investigation, Homicide learned of the Family's involvement in illicit drug transactions and summoned the aid of the Dade Narcotics and Major Crimes Division as well as the Drug Enforcement Administration. By the beginning of his involvement in the investigation, Detective Thomas Williams was aware that Claimant was a known associate of the Family.

Incident to the investigation, law enforcement officers installed a Penn register and a wiretap on Raul Placencia's home phone. On September 7, 1987, at approximately 3:20 P.M., the Claimant, a known associate of the Family, called Elena Placencia and ordered "ten puppies." According to the Government, Claimant was in reality placing an order for ten kilograms of cocaine. To substantiate its contention, the Government introduced uncontroverted testimony that the Family had no known interests in any pet shop or animal farm.

Claimant denies that the above-referenced phone call was placed from his home. In support of his position, he relies on his statement during the telephone conversation that he was not home. For reasons which will become obvious, *see infra,* whether the call was placed from claimant's home plays a minor role, if any, in the Court's resolution of the instant action.

On September 7, 1987, at approximately 5:52 P.M., Diaz received a call at his home from one of the Family's associates, Orlando Nunez, a/k/a Landy. During the conversation, Claimant told Landy that he would be home for the rest of the day, and thus able to receive the cocaine. Based

upon this call, Detectives Williams and O'Keefe were notified that an illicit drug transaction would probably be taking place at Claimant's residence. Accordingly, at approximately 6:21 P.M., the detectives drove by Claimant's residence at 31 N.W. 36th Court, Miami, Florida and established a surveillance post just north of the premises.

The detectives surveilled the premises for approximately two hours and thirty minutes, between 6:20 P.M. and 8:45 P.M. On direct examination, Detective Williams described Claimant's activities during this period. On Detective Williams' first "drive by" of the premises, Claimant was standing in front of his house near the apron of his circular driveway, holding a cellular telephone. The garage door, south of the circular driveway, was open. Claimant looked up and down the street before returning inside his home. According to Detective Williams, such behavior represents a standard counter-surveillance tactic employed by drug dealers.

Detective Williams further testified that Claimant exited and entered his house "five or six times." Each time, the garage door would open and Claimant would walk out onto the apron of the driveway. While entering and exiting, Claimant would always carry his cellular telephone and look up and down the street.

### B. *The Sting*

At approximately 8:45 P.M., Claimant backed his Cadillac out of his garage, parked it on the south portion of the circular driveway and exited his vehicle. There is no dispute that Claimant's vehicle remained on his property. Within moments, a blue sedan driven by Landy passed right in front of the detectives heading north on 136th Court. Based upon their prior investigation of the family, the detectives immediately recognized the car and the driver as a member of the Family. At this point, the

---

the intent to distribute cocaine. Accordingly, the jurisdictional requirement of Section 881(a)(7), requiring a violation of Title 21, has been satisfied.

**2.** Much of the undisputed evidence concerning the instant undercover investigation was intro-

duced by the Government's only witness, Detective Thomas Williams, Metro–Dade Police Department. Claimant called only one witness, an investigator who offered various photographs of the Defendant property.

detectives quickly realized that the deal was about to "go down."

The blue sedan turned into the northern portion of Claimant's circular driveway, eventually coming to rest facing south, perpendicular to the Claimant's vehicle. At this point, the detectives were faced with a split second decision: either to rush the two individuals without any backup and seize the cocaine, or, let the deal go through and possibly be precluded from viewing the transaction, fearing the drugs would be exchanged inside Claimant's enclosed,garage. Much to their credit, lacking any backup, the detectives courageously decided to intercede.

The detectives drove into the north section of the circular driveway and pulled right behind Landy's vehicle, which was perpendicular to Claimant's vehicle. The detectives immediately informed Landy and Claimant that they were the police. After securing the two, Detective O'Keefe spotted a brown paper bag in the back of Landy's vehicle. O'Keefe seized the bag and found a white powdery substance inside. This substance was later identified to be cocaine, weighing ten kilograms.

At this point, the detectives did not effectuate any arrests. Rather, they tried to make the seizure look like a drug rip-off, effectuated by dishonest cops or rival drug dealers. The officers hoped that concealing the true nature of the seizure would lead to further arrests, believing that law enforcement officials could learn more about the operation through its phone taps already in place. Claimant was arrested eight days later.

## II.

### CONCLUSIONS OF LAW

Pursuant to 21 U.S.C. § 881(a)(7), the Government seeks forfeiture of an entire tract of real property along with its improvements at 31 N.W. 136th Court, Miami, Florida. Claimant owns the subject tract by warranty deed. Under 21 U.S.C. § 881(a)(7), the Defendant property is subject to forfeiture if "used or intended to be used, in any manner or part, to commit or to facilitate the commission of a violation of a Title 21 drug offense." The jurisdictional requirement has been met. Moreover, the Claimant's standing to oppose the Government's forfeiture action is not contested.

■ To support a forfeiture under 21 U.S.C. 881(a)(7), the Government must establish probable cause to believe a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance.[3] *United States v. One 1979 Porsche Coupe*, 709 F.2d 1424, 1426 (11th Cir.1983); *United States v. A Single Family Residence located at 900 Rio Vista Blvd.*, 803 F.2d 625, 628 (11th Cir.1986), *citing United States v. $4,255,-625.39*, 762 F.2d 895, 903 (11th Cir.1985). Probable cause is defined as a "reasonable ground for belief of guilt, supported by less than prima facie proof, but more than mere suspicion." *A Single Family, supra* at 628, *citing United States v. $364,960*, 661 F.2d 319, 323 (5th Cir. Unit B 1981). The existence of probable cause is judged "not with clinical detachment, but with a common sense view to the realities of normal life." *A Single Family Residence located at 900 Rio Vista Blvd., supra* at 628.

Once the Government demonstrates the existence of "probable cause for belief" that a substantial connection exists between the property to be forfeited and the illegal activity, the burden of proof then shifts to the Clamant to establish by a preponderance of evidence that the property is not subject to forfeiture. *A Single Family Residence, supra* at 629, *citing United States v. $4,255,625.39*, 762 F.2d 895, 903 (11th Cir.1985), *cert. denied* 474

---

**3.** This Court's independent research has failed to discover any Eleventh Circuit opinions analyzing the Government's burden of proof under Section 881(a)(7), as amended. The above-cited cases, employing the "substantial connection" test, were operating under Section 881(a)(6), which had been utilized as a catch-all provision to forfeit real property before the enactment of Section 881(a)(7). The legislative history of Section 881(a)(7) does not seem to dictate that we apply a different standard under this new section. Moreover, both parties have framed the issue before the Court under the substantial connection test.

U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).

### A. *The Parties' Contentions*

The Government contends that a substantial connection existed between Defendant property and the aborted narcotics transaction of September 7, 1987. In support of this position, the Government introduced evidence to prove the following:

1. Claimant placed an order for "ten puppies," which in reality was an order for cocaine.

2. Claimant arranged the instant drug transaction in order to receive the cocaine at his home.

3. Claimant prepared to receive the drugs at his home and employed counter-surveillance measures between 6:20 P.M. and 8:45 P.M. on September 7, 1987.

4. According to plan, the cocaine was in fact delivered to Claimant's property.

In response, Claimant contends that the Government has not established probable cause, arguing that the Government's testimony and documentary evidence is insufficient to meet its burden of proof. Claimant's sole contention is that the Defendant residence was merely incidental to the underlying drug transaction. Claimant places great significance on the fact that the cocaine was seized in his driveway, not in his home.

In essence, Claimant is raising a proportionality argument. Claimant argues that it would be unfair and contrary to the legislative intent behind Section 881(a)(7) to forfeit Claimant's entire tract, including his home, when the Government concedes that the cocaine was seized in the driveway. Therefore, Claimant concludes that the home was not "substantially connected to the drug transaction." Accordingly, the Court should deny the Government's claim for forfeiture of Claimant's entire property. Having examined the parties contentions, we now turn to resolving the instant forfeiture action.

### B. *Discussion*

■ Initially, we address Claimant's contention that § 881(a)(7) does not envision forfeiture of an entire tract based upon illicit drug activies occurring on a portion of that tract. The plain meaning of § 881(a)(7), along with the federal case law interpreting its operative language, dictate this Court's rejection of Claimant's restrictive interpretation of § 881(a)(7).

In determining the scope of a statute, we first look to its language. *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). In pertinent part, the statute provides the following:

(a) Property subject:

The following shall be subject to forfeiture to the United States and no property right shall exist in rem:

(7) All real property, including any right, title and interest *in whole of any lot or tract of land and any appurtenances or improvements,* which is used or intended to be used, *in any manner or part,* to commit or facilitate the commission of a violation of this title. (Emphasis supplied.)

As an elementary principle of statutory construction, we must accord the unambiguous language of a statute its "plain meaning." *Kleer v. United States,* 761 F.2d 1492, 1495 (11th Cir.1985); *citing Rickard v. Auto Publisher, Inc.,* 735 F.2d 450, 454–55 (11th Cir.1984). "In choosing the language 'interest in the whole of any lot or tract of land ... which is used or intended to be used, *in any manner or part,*' Congress expressly contemplated forfeiture of an entire tract based upon drug-related activities on a portion of a tract." *United States v. Reynolds,* 856 F.2d 675, 676 (4th Cir.1988); *United States v. Littlefield,* 821 F.2d 1365 (9th Cir.1987); *see also United States v. Real Property and Residence at 3097 S.W. 111th Avenue,* 699 F.Supp. 287 (S.D.Fla.1988).

Federal Circuits addressing the breadth of § 881(a)(7) have reached identical conclusions. In *United States v. Tax Lot 1500,* 861 F.2d 232, 235 (9th Cir.1988), the court held that the proportionality requirement of the Eighth Amendment, applicable in the criminal context, does not apply in civil in rem forfeiture proceedings. Accordingly, the *Tax Lot* court affirmed the district

court's entry of summary judgment forfeiting claimant's dwelling house and the entirety of his land and improvements, even though only a small portion of claimant's tract was used to grow contraband.

Similarly, the *Reynolds* court held that the entirety of claimant's thirty acre tract was subject to forfeiture based solely on evidence of drug transactions taking place in the house, driveway and swimming pool. *Reynolds, supra* at 677. In affirming the district court order of forfeiture, the *Reynolds* court stated the following:

> Given clear statutory language allowing for the forfeiture of an entire tract based upon use of a portion, we think that the language should be literally followed.

Based upon the above discussion, this Court finds the plain meaning of § 881(a)(7) clearly envisions forfeiture of an entire tract based upon drug-related activities on a portion of that tract. Once rejecting Claimant's restrictive interpretation of § 881(a)(7), we now turn to whether the Government has sustained its burden of proof.

■ The Court concludes that the uncontroverted evidence proffered at trial clearly establishes the following:

1. Claimant entered into a conspiratorial agreement, intending to receive a delivery of cocaine at his home.

2. On September 7, 1987, Claimant confirmed that he would receive the cocaine at his home during a phone conversation from his home.

3. On September 7, 1987, between 6:20 P.M. and 8:45 P.M., Claimant engaged in counter-surveillance measures at his home in preparation for receipt of the cocaine.

4. On September 7, 1987, according to the conspiracy, the cocaine was delivered to Claimant's home.

5. On September 7, 1987, Detectives Williams and O'Keefe seized approximately 10 kilograms of cocaine from Claimant's circular driveway.

In *United States v. Real Property and Residence at 3097 S.W. 111th Avenue,* 699 F.Supp. 287 (S.D.Fla.1988), the factual scenario was nearly identical to the facts of the instant case. Based upon a finding that an illicit drug deal had taken place on claimant's driveway, the *Real Property* court ordered forfeiture of claimant's entire tract, including his residence. *Real Property, supra* at 289–290. In our opinion, the facts of the instant case compel the same result.

Based upon the uncontroverted evidence offered by the Plaintiff and the plain meaning of § 881(a)(7), the Court concludes that the Government has established probable cause to believe that the Defendant property was used to facilitate a violation of Title 21.

Once establishing probable cause, the burden shifts to the Claimant to rebut this showing. In the instant case, however, Claimant chose not to do so. Accordingly, our inquiry is complete upon a finding that the Government has established probable cause. *A Single Family Residence at 900 Rio Vista Blvd., supra* at 630, *citing United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980). Our task is therefore complete.

## III.

### CONCLUSION

Based upon the foregoing Memorandum Order, it is ORDERED and ADJUDGED as follows:

1. The Government's request for forfeiture of the real property located at 136th Court is hereby granted. The instant real property, in its entirety, shall be forfeited to the United States of America.

2. Pursuant to the settlement reached between the Government and the mortgagee of the subject real property, forfeiture entitles the Government to own the property free and clear.

3. The Government shall forthwith submit a proposed Final Judgment in keeping with this Order.

DONE and ORDERED.