**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**JAMES DANIEL GOOD PROPERTY TITLED IN THE NAME OF JAMES DANIEL GOOD, Described in Transfer Certificate Title No. 249, 207, Tax Map Key No. 1–6–008–233(3), Located at Keeau, District of Puna, Island and County of Hawaii, State of Hawaii, Together With Appurtenances and Improvements, Defendant–Appellant.**

No. 90–16636.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1991.

Decided April 24, 1992.

As Amended on Denial of Rehearing
and Rehearing En Banc
Sept. 10, 1992.

Christopher J. Yuen, Hilo, Hawaii, for defendant-appellant.

Beverly A. Wee, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before: ALDISERT,* GOODWIN, and NOONAN, Circuit Judges.

GOODWIN, Circuit Judge:

This appeal challenges the civil forfeiture of a home pursuant to 21 U.S.C. § 881(a)(7),[1] the provision of the Controlled Substance Act that authorizes the forfeiture of real property. James Daniel Good challenged the forfeiture as untimely and as a violation of due process. The district court, exercising jurisdiction under 21 U.S.C. § 881(b), granted the government's motion for summary judgement. The district court found the action to be timely and in accordance with due process. Notice of Appeal was filed in compliance with Fed.R.App.P. 4(a). Our jurisdiction is based on 28 U.S.C. § 1291. We reverse and remand on the timing issue; we reverse on the due process question, finding that Good's rights were violated, and we affirm the district court in all other respects.

## I.

On January 31, 1985, pursuant to a search warrant, Hawaii state police officers uncovered approximately 89 pounds of marijuana, marijuana seeds, vials containing hashish oil, and other drug paraphernalia. Good pleaded guilty on July 3, 1985 to promoting a harmful drug in violation of Hawaii Revised Statutes § 712–1245(1)(b). He served one year in jail and was placed on probation. He was also required in a state court forfeiture action to surrender $3,187 in cash found on the premises.

Some four years later, on August 8, 1989, the United States filled the present action, seeking to forfeit Good's house and property pursuant to § 881(a)(7). On August 21, 1989, a Seizure Warrant directing U.S. Marshals to seize the defendant property was issued by a magistrate judge of the U.S. District Court of Hawaii. The affidavit in support of the seizure warrant was sworn by a DEA special agent and relied exclusively on evidence gathered in the January 31, 1985 state police search of Good's house.

Good filed a timely claim for the property. After discovery, in July 1990, Good filed a motion for summary judgement and a motion for rents on the property collected by the government after the seizure. The government filed its own motion for summary judgement and moved to strike Good's claim. The district court denied Good's motions and granted the government's. This appeal followed.

## II.

The United States sought forfeiture of Good's home four years after Good was convicted and sentenced on state drug charges and four and one half years after the underlying predicate acts occurred. Most of the forfeiture cases concerned with procedural and timing issues deal with lengthy delays between the initial seizure of property and the instigation of forfeiture proceedings. This case, however, is concerned with the effects of a lengthy delay between the underlying predicate acts and the initiation of forfeiture proceed-

---

* Honorable Ruggero J. Aldisert, Senior Circuit Judge, Third Circuit, sitting by designation.

1. In 1984 Congress amended the Controlled Substance Act, Pub.L. 91–513, 84 Stat. 1242 (Oct. 27, 1970), to allow for the forfeiture of real property. See Pub.L. 98–473, § 306(a), 98 Stat. 2050 (Oct. 12, 1984).

ings. The contention that the forfeiture was untimely involves the interpretation of statutes and is subject to review as a question of law. *Bunting v. United States,* 884 F.2d 1143, 1145 (9th Cir.1989).

■ The Controlled Substance Act does not establish procedures to govern civil forfeiture, rather, section 881 incorporates the procedures outlined in the customs laws.

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter ...

21 U.S.C. § 881(d). This court interprets 21 U.S.C. § 881 as incorporating the provisions "set forth in Title 19 of the United States Code, sections 1602–21." *United States v. One 1971 BMW 4–Door Sedan,* 652 F.2d 817, 819 (9th Cir.1981).

Section 1621 of the customs laws provides the statute of limitations for initiating customs forfeiture and penalty proceedings. It reads in pertinent part:

> No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered.

19 U.S.C. § 1621. The customs laws also outline specific obligations for customs agents and officers, as well as for U.S. attorneys and the Attorney General.

Good argues that the five year limitations period in section 1621 establishes an outer limit and that actions filed within the five year period may still be untimely if filed in violation of other relevant sections of the customs laws, *see* 19 U.S.C. §§ 1602–04.[2] These other provisions establish a series of internal notification and reporting requirements where customs agents must report to customs officers, *see* 19 U.S.C. § 1602, customs officers must report to the United States attorney, *see* 19 U.S.C. § 1603, and the Attorney General must "immediately" and "forthwith" bring a forfeiture action if he believes that one is warranted, *see* 19 U.S.C. § 1604.

In *One 1971 BMW 4–Door Sedan* this court held that the mandates of sections 1602, 1603 and 1604 were applicable to 21 U.S.C. § 881 forfeitures. In that case, however, the Drug Enforcement Administration ("DEA") had already seized the property in question.

> Section 1602 impose[s] on the seizing officer a duty to report the seizure immediately to the appropriate DEA official; section 1603 require[s] the DEA official to report the seizure promptly to the appropriate United States Attorney for prosecution of the forfeiture and to include in that report a statement of all facts relevant to the seizure; and section 1604 require[s] the United States Attorney immediately upon receipt of that report to inquire into the facts of the case and the laws applicable thereto to determine "if it appears probable that ... forfeiture has been incurred," and to institute proceedings "forthwith," unless, upon inquiry and examination, he decide[s] "that such proceedings probably cannot be sustained or that the ends of public justice do not require that they be instituted or prosecuted."

652 F.2d at 819–20.[3]

We have found no case which interprets the statute of limitations, section 1621, in

---

**2.** Alternatively, Good asks us to adopt the reasoning of Judge Ferguson's concurring opinion in *United States v. Tax Lot 1500,* 861 F.2d 232, 236 (9th Cir.1988) (Ferguson, J., concurring), *cert. denied,* 493 U.S. 954, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989). Judge Ferguson argues that the language of 21 U.S.C. § 881(a)(7), the provision authorizing the forfeiture of real property, requires the prompt commencement of forfei-

ture proceedings. That issue was not properly before the court in *Tax Lot 1500* and we are not bound by the views of a concurring opinion. We are not persuaded by the argument and decline to make it a basis for our decision.

**3.** In 1980 these provisions were amended to substitute "the Attorney General of the United States" and "the Attorney General" in the place

light of the DEA's obligations under sections 1602–04. Some courts have applied the statute of limitations to various forfeiture actions without considering the possible limiting effects of sections 1602–04. The Third Circuit simply applied the five year rule in deciding that a forfeiture action initiated in 1989, based on predicate acts discovered in 1986, was not time barred. *United States v. A Parcel of Land, Bldgs., App. & Imp.*, 937 F.2d 98, 105 (3rd Cir.1991), cert. granted, — U.S. —, 112 S.Ct. 1260, 117 L.Ed.2d 490, and cert. denied, — U.S. —, 112 S.Ct. 1264, 117 L.Ed.2d 492 (1992). The court found that there had been no undue delay, but was not asked to consider whether government officials complied with sections 1602–04. Similarly, two district courts have applied the five year rule without discussing the issue before this court. *See United States v. $116,000 in U.S. Currency*, 721 F.Supp. 701, 705 (D.N.J.1989) (forfeiture action barred by § 1621); *United States v. 2401 S. Claremont*, 724 F.Supp. 670, 673 (W.D.Mo.1989) (forfeiture action not barred by § 1621). The court in *2401 S. Claremont* relied on dicta found in a footnote of a Supreme Court opinion examining the due process implications of delaying the initiation of forfeiture proceedings once property has been seized. *See United States v. $8,850*, 461 U.S. 555, 563 n. 13, 103 S.Ct. 2005, 2011 n. 13, 76 L.Ed.2d 143 (1983). The Court read section 1621 as creating a five year statute of limitations but, given that the issue was not before it, did not examine the effects of competing obligations under sections 1602–04. Finally, the First Circuit held that a ten month delay in initiating forfeiture proceedings was not unreasonable. *United States v. Land and Bldg. at 2 Burditt Street*, 924 F.2d 383, 385 (1st Cir.1991). The court, however, also in dicta, expressed skepticism as to whether the government was free to initiate proceedings any time it chose within the five year period. *Id.*

The scope of the DEA's obligations under sections 1602–04 when there has not

been a seizure of property and the relationship between these provisions and the statute of limitations, section 1621, are issues of first impression. The government contends that there is no conflict between the provisions because section 1604's mandate to the Attorney General applies only when property has been seized. According to this argument, nothing in sections 1602–04 pertain to the process or timing of the decision to initiate forfeiture proceedings in the absence of seizure. The government concludes that it is free to seek forfeiture at any time within the five year statute of limitations.

Like any exercise in statutory interpretation, we begin by examining the language of the statute and assessing its plain meaning. *North Dakota v. United States*, 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983); *United States v. Hurt*, 795 F.2d 765, 770 (9th Cir.1986), cert. denied, 484 U.S. 816, 108 S.Ct. 69, 98 L.Ed.2d 33 (1987). Contrary to the government's assertion, the language of section 1604 does not restrict itself to situations where there has been a seizure of property.

It shall be the duty of the Attorney General of the United States immediately to inquire into the facts of *cases reported to him by customs officers* and the laws applicable thereto, and if it appears probable that any fine, penalty, or forfeiture has been incurred *by reason of such violation*, for the recovery of which the institution of proceedings in the United States district court or the Court of International Trade is necessary, forthwith to cause the proper proceedings to be commenced and prosecuted, without delay, for the recovery of such fine, penalty, or forfeiture ...

19 U.S.C. § 1604 (emphasis added). Rather than speaking in terms of seizure, the section refers to those "cases reported to him by customs officers" as well as fines, penalties and forfeitures incurred by "such violation[s]."

of "United States attorney." *See* Pub.L. 96–417, 94 Stat. 1746 (Oct. 10, 1980). This amendment

does not affect our analysis.

To understand the meaning of these terms, it is necessary to examine section 1604 in the context of the reporting requirements of sections 1602 and 1603. Section 1602 provides:

It shall be the duty of any officer, agent, or other person authorized by law to make seizures of merchandise or baggage subject to seizure for violation of the customs laws, to report every such seizure immediately to the appropriate customs officer for the district in which such violation occurred, and to turn over and deliver to such customs officer any vessel, vehicle, aircraft, merchandise or baggage seized by him, *and to report immediately to such customs officer every violation of the customs laws.*

19 U.S.C. § 1602 (emphasis added). The duty of agents to report to their superiors is not limited to those instances where they have seized property.

Similarly, section 1603 requires:

Whenever a seizure of merchandise for violation of the customs laws is made, *or a violation of the customs laws is discovered,* and legal proceedings by the United States attorney in connection with such seizure *or discovery* are required, it shall be the duty of the appropriate customs officer to report such seizure *or violation* to the United States attorney for the district *in which such violation has occurred,* or in which such seizure was made, and to include in such report a statement of the facts and circumstances of the case within his knowledge, with the names of the witnesses and a citation to the statute or statutes believed to have been violated, and on which reliance may be had for forfeiture or conviction.

19 U.S.C. § 1603(b) (emphasis added).

■ While it is clear that these provisions encompass seizures, we hold that the substance of the procedures outlined in sections 1602–04 is not limited to those instances where seizure of property has already occurred. The same procedural requirements apply when government agents who are bound by these provisions learn of violations of the law that may subject property to forfeiture.

■ Interpreting sections 1602–04 to require prompt government action when FBI and DEA agents have knowledge of violations of the law implicating forfeiture does not render the five year statute of limitations meaningless. Section 1621 is not phrased to extend the government the authority to seek forfeiture at anytime within a five year period. Section 1621 is phrased in the negative: "No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered." 19 U.S.C. § 1621. As the First Circuit has reasoned, this section provides "that a forfeiture action cannot be brought after a lapse of five years; not that forfeiture may be commenced at any time within five years." *Land and Building at 2 Burditt Street,* 924 F.2d at 385 (dicta). Our interpretation of sections 1602–04 and 1621 is consistent with the face of the statute.

■ Moreover, the statute of limitations incorporates a discovery rule, which has been interpreted to employ a "known or should have known standard." An offense is discovered "when a 'party discovers or possesses the means to discover the alleged wrong, whichever occurs first.'" *$116,000 in U.S. Currency,* 721 F.Supp. at 703–04 (quoting *United States v. R.I.T.A. Organics, Inc.,* 487 F.Supp. 75, 77–78 (N.D.Ill.1980)). The requirements of sections 1602–04, on the other hand, are triggered when knowledge of the alleged violation actually exists. Finally, section 1621 is applicable to the United States government as a whole. The mandates of sections 1602–04 are much narrower. The expedited reporting and action requirements apply only to those federal officers authorized to seize property, and they are triggered only when actual knowledge of a violation of a law potentially justifying forfeiture exists.

The policy reasons cited by the government for pursuing civil forfeiture after the termination of criminal proceedings does not require a different outcome. The government can cite no policy interest for

waiting for four years after the termination of criminal actions. Additionally, as the government acknowledges, governmental concerns can be accommodated by requesting a stay in the civil proceeding.

■ It remains to be determined how duties directed to customs agents and officials are to be translated in the context of 21 U.S.C. § 881 for the purposes of civil forfeiture under the Controlled Substance Act. Section 881(d) provides

> that such duties that are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General.

21 U.S.C. § 881(d). Federal regulations designate those officers who can make seizures under the Controlled Substance Act. "For the purpose of carrying out the Act, all special agents of the Drug Enforcement Administration and the Federal Bureau of Investigation are authorized and designated to seize such property as may be subject to seizure." *See* 21 C.F.R. § 1316.72. Given that FBI and DEA agents are authorized to seize property, these agents are also bound by the reporting obligations of sections 1602 and 1603. Their reports of seizures *and* violations of the law implicating potential forfeitures trigger the Attorney General's obligations under section 1604.

■ In the raid on Good's house, an IRS agent accompanied the local police. This agent was neither authorized to seize property nor bound to report the alleged offense. His presence did not trigger any of the requirements of sections 1602–04. Robert Aiu, a special agent for the DEA, ultimately swore the 1989 affidavit in support of the seizure warrant. The government refused to answer interrogatories directed at determining when Aiu or any other DEA personnel obtained actual knowledge of the alleged offense. We cannot determine from the record before us when the government's obligations under sections 1602–04 were triggered. Consequently, the record does not reveal whether the government acted in a prompt and timely fashion in compliance with the statute.

The case is remanded to the district court to develop the factual record necessary for this determination.[4]

### III.

Good's home was seized pursuant to a seizure warrant issued by a United States magistrate. There was no prior notice or opportunity for the property owner to be heard before the seizure of his home. 21 U.S.C. § 881 does not provide for such a hearing. Good argues that the statute is an unconstitutional violation of due process both on its face and as applied. The government cites a phalanx of Ninth Circuit opinions that uniformly support the proposition that items subject to forfeiture may be seized without prior judicial review. *See United States v. One 1985 Cadillac Seville,* 866 F.2d 1142 (9th Cir.1989); *United States v. One 1971 BMW 4–Door Sedan,* 652 F.2d 817 (9th Cir.1981); *United States v. One 1972 Mercedes Benz,* 545 F.2d 1233 (9th Cir.1976); *United States v. Tax Lot 1500,* 861 F.2d 232 (9th Cir.1988), *cert. denied,* 493 U.S. 954, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989).

All of these cases, save one, have one thing in common: the seized property can be driven away and could find itself in another jurisdiction by sundown. The exception is *Tax Lot 1500,* which involved the forfeiture of real property. The government urges us to rest our decision on this case. The problem with *Tax Lot 1500,*

---

**4.** The facts of this case illustrate how sections 1602–04 and 1621 continue to have separate and independent meanings. It can fairly be argued that the discovery rule under § 1621 was triggered at the time of the state police search, especially given the presence of the IRS agent. The five year statute of limitations began to run at this time. Analysis under sections 1602–04, however, involves a separate inquiry. These provisions are implicated only when DEA or FBI agents obtain knowledge of the offense.

however, is that it was argued and submitted as an eighth amendment case, not as a due process case. Neither the due process arguments nor the record before the court were sufficiently developed to support the broad proposition cited by the government that the absence of a pre-seizure hearing can never raise constitutional questions, even when real property is being forfeited. *Tax Lot 1500* specifically reserved the issue of a potential facial challenge to § 881 and confined its holding to the statute as applied. The court found that the process afforded "sufficiently cured any possible constitutional defect" *in that case. See* 861 F.2d at 236.

*Tax Lot 1500* does not provide a general framework for analyzing the due process implications of forfeiting real property and is of little help in resolving the issue in the present case. For guidance, we turn to the Supreme Court's decisions in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), and *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). *Mathews v. Eldridge* identifies a number of factors that should be considered in determining whether or not there has been a violation of due process. Courts are instructed to consider the significance of the property interest at stake, the risk of erroneous deprivations given the procedures actually used, as well as the probable value of additional procedural safeguards, and, finally, the government's interest in pre-notice seizure. 424 U.S. at 335, 96 S.Ct. at 903.

*Fuentes* teaches that due process requires notice and an opportunity to be heard prior to the deprivation of a property interest. 407 U.S. at 80–82, 92 S.Ct. at 1994–95. Exceptions to this rule are warranted only in "extraordinary situations." The second of three defining characteristics of such an extraordinary situation is when there is "a special need for very prompt action." 407 U.S. at 91, 92 S.Ct. at 2000.

*Calero–Toledo* applied the *Fuentes* criteria to civil forfeitures holding that an exception to the general rule of notice and an

opportunity to be heard is warranted when the property being forfeited is a yacht. Central to the Court's analysis was the fact that the property in question was personal property and that it was movable. "[T]he property seized—as here, a yacht—will often be the sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given." 416 U.S. at 679, 94 S.Ct. at 2090. This case has been relied upon to establish the general proposition that due process does not require government officials to conduct hearings before seizing items of personal property that are subject to forfeiture.

 *Calero–Toledo,* however, was decided before 21 U.S.C. § 881(a)(7) was adopted in 1984. Section 881(a)(7) made real property subject to civil forfeiture for the first time. We find that, for the purposes of due process analysis, real property is distinct from personal property. One of the unique aspects about a piece of land is that it cannot be easily moved, eliminating the *Fuentes* requirement for "very prompt action." The forfeiture of a person's home also has implications for the balance in *Mathews v. Eldridge.* People have a particularly strong interest in their homes, and the government has a less significant interest in seeking forfeiture prior to giving notice and an opportunity to be heard. The home will be there when the government decides to initiate forfeiture proceedings. The home will be there when the government delivers notice of its intent. Finally, the home will still be there for seizure if the government is successful on the merits of its action. These factors shift the balance struck in *Calero–Toledo* and in most instances will militate in favor of requiring a pre-seizure hearing before an individual's home can be taken.

The Second Circuit has grappled with the difficult issues raised by the seizure of a house. *See United States v. Property at 4492 S. Livonia Rd.,* 889 F.2d 1258 (2nd Cir.1989). In a well-reasoned opinion the court examined the factors identified in *Mathews v. Eldridge* and concluded that "under all the circumstances there were no

exigent circumstances justifying the seizure of [the individual's] home when the forfeiture action was started." 889 F.2d at 1265. The court held that due process required the provision of a pre-seizure hearing. The Eleventh Circuit, in a cursory treatment of the question, has come to the opposite conclusion. *See United States v. A Single Family Residence*, 803 F.2d 625, 632 (11th Cir.1986). We find the Second Circuit's analysis persuasive and reach a similar result.

Good has a substantial and unique interest in his home. The government's interest in avoiding a pre-seizure hearing is not significant in this case. The house is not going anywhere. It is not going to be "removed to another jurisdiction, destroyed or concealed." *Calero–Toledo*, 416 U.S. at 679, 94 S.Ct. at 2090. Any legitimate interest the government has may be protected through means less restrictive than seizure. "Any exigency that might be posed by threat of an encumbrance on, or transfer of, the property may be met by less restrictive means than seizure, for example, by the filing of a lis pendens ... along with a restraining order or a bond requirement." *Livonia Road*, 889 F.2d at 1265. The government argues after a four and a half year delay that no pre-seizure hearing should be required because quick action was necessary. Government claims of urgency do not inspire confidence. The government does have a strong interest in seeing that the property is no longer used for illegal purposes, but this interest can be met through means less drastic than seizure of the real property. On the facts of this case we find that the statute, as applied, violated Good's rights to due process. Good was entitled to notice and an opportunity to be heard before his home was seized. We need not reach the facial challenge.

 If on remand the district court finds the filing of this proceeding to be timely, the violation of Good's due process rights need not invalidate the forfeiture. The " 'mere fact of the illegal seizure, standing alone, does not immunize the [seized] goods from forfeiture.' " *United*

*States v. One 1971 Harley–Davidson Motorcycle*, 508 F.2d 351 (9th Cir.1974) (per curiam) (quoting *John Bacall Imports, Ltd. v. United States*, 412 F.2d 586, 588 (9th Cir.1969); *see also Livonia Road*, 889 F.2d at 1265–66. Good is, however, entitled to the rents accrued during the illegal seizure of his home.

## IV.

Other issues were briefed and argued on appeal and are found to be without merit. The district court is affirmed in all other respects. The case is remanded for a determination of when the DEA learned of the underlying violation and whether its subsequent actions complied with 19 U.S.C. §§ 1602–04. If the action is found to be timely, then summary judgement may be entered in favor of the government. If the action is untimely, then the case should be dismissed. In either instance, Good is entitled to the rents accrued on his home after seizure.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

NOONAN, Circuit Judge, concurring and dissenting:

I concur in all but Part II, as to which I dissent. In Part II, the court has converted a set of housekeeping rules for the government into statutory protection for the property of malefactors. Once property has been used in the commission of a narcotics offense it is subject to forfeit. 21 U.S.C. § 881(a). The government is free to claim the forfeiture any time after the offense is discovered. The only relevant restriction is the statute of limitations, which bars suit five years after the time of discovery. 19 U.S.C. § 1621.

The opinion of the court in Part II, in effect, creates a new statute of limitations. It also provides a new construction of a statute that has been in existence for almost seventy years and has been applied in a variety of contexts to customs offenses without any court ever giving the statute the application given in this case. The closest authority that the majority can find is dicta in a case that speaks of "due process implications" if a forfeiture were

"brought against a property the owner of which already has been tried and acquitted." *United States v. Land and Bldg. at 2 Burditt Street*, 924 F.2d 383, 386 (1st Cir.1991). With all respect, these dicta are not authority for the surprising construction of the statute advanced here.