UNITED STATES of America, Plaintiff,

v.

REAL PROPERTY COMMONLY KNOWN AS 16899 S.W. GREENBRIER, LAKE OSWEGO, CLACKAMAS COUNTY, OREGON, in rem, Defendant.

UNITED STATES of America, Plaintiff,

v.

REAL PROPERTY COMMONLY KNOWN AS 801 NORTHSHORE ROAD, LAKE OSWEGO, CLACKAMAS COUNTY, OREGON, in rem, Defendant.

UNITED STATES of America, Plaintiff,

v.

REAL PROPERTY COMMONLY KNOWN AS 16990 ALDER CIRCLE, LAKE OSWEGO, CLACKAMAS COUNTY, OREGON, in rem, Defendant.

UNITED STATES of America, Plaintiff,

v.

REAL PROPERTY COMMONLY KNOWN AS 706 McVEY AVENUE, LAKE OSWEGO, CLACKAMAS COUNTY, OREGON, in rem, Defendant.

Civ. Nos. 91–823–BE to 91–826–BE.

United States District Court,
D. Oregon.

Sept. 17, 1991.

Charles H. Turner, U.S. Atty., D. Or., Craig J. Casey, Asst. U.S. Atty., Portland, Or., for plaintiff.

Norman Sepenuk, Douglas Stringer, Portland, Or., for claimants Gurs and Larson.

## OPINION

BELLONI, District Judge.

The claimants in these four consolidated civil forfeiture cases move to dismiss each of the complaints and for the return of the defendant properties. I granted the claimants' request for an expedited hearing, and heard oral argument on September 10, 1991. For the reasons set out below, the motions are denied.

## BACKGROUND

These forfeiture actions arise out of a criminal investigation of George R. Gurs, a Lake Oswego businessman operating a company known as Great American Property Company. The United States contends that Gurs conducted a fraudulent real estate investment scheme, wherein Gurs made false statements to real estate investors from other states, inducing more than

170 investors to invest over $6,000,000 in Oregon real estate. No criminal charges have yet been filed against Gurs, but a grand jury investigation is in progress, and the government has stated that it expects to issue an indictment against Gurs for money laundering, mail fraud, and interstate transportation of monies obtained by fraud.

On August 14, 1991, the United States filed civil forfeiture complaints against four pieces of real property located in Lake Oswego, Oregon, and alleged to be involved in and the proceeds of Gurs' fraudulent scheme: 16899 S.W. Greenbrier Road, 801 Northshore Road, 16990 Alder Circle, and 706 McVey Avenue. Each of the defendants is a single family residence. The Greenbrier Road property is the home of Gurs, his wife Charette Larson, and their two children. Two of the other properties, Northshore and McVey, are rented at present, and Alder Circle was for sale at the time of seizure.

Warrants of arrest were issued for each of the defendant properties, and were executed on August 17, 1991. The government also obtained seizure warrants for three automobiles and two boats owned by Gurs. No forfeiture complaints have been initiated for the five items of personal property, but they were seized on the basis that they are forfeitable as property that was the proceeds of Gurs' scheme. All of the materials related to the forfeiture complaints, the arrest warrants and the seizure warrants were placed under seal, on the representation of the government that secrecy was required until the property was seized, so that Gurs could not remove or dispose of the property.

Most of the materials relating to the four civil forfeiture complaints were unsealed on the application of the United States after the seizures took place. The claimants are Gurs, Larson, the Charette S. Larson Revocable Trust, and the Charette S. Larson Irrevocable Trust. The claimants moved to unseal the affidavit of FBI Special Agent Robert E. Sauter, which provides the factual basis for the forfeiture complaints, and which was the only material item still remaining under seal. I granted that motion after a hearing on September 3, 1991.

## CONTENTIONS OF THE PARTIES

Claimants move to dismiss the forfeiture complaints against the four pieces of real property on the grounds that the complaints fail to state a claim upon which relief can be granted. Alternately, the claimants move for a more definite statement on the grounds that the complaints are so lacking in specificity that the claimants cannot reasonably be required to frame a responsive pleading. Claimants further move for the return of the defendant properties under 28 U.S.C. § 2465 and Fed.R.Cr.Proc. 41(e). These motions do not concern the five items of personal property, which are being handled in administrative proceedings, and which are not before this court.

Claimants contend that: 1) the use of civil forfeiture to seize assets in aid of a criminal prosecution violates due process; 2) the seizure of the properties without prior notice and hearing violates due process; 3) the sole purpose for these forfeiture actions was to freeze assets in aid of a planned criminal prosecution without affording due process; 4) the complaints for forfeiture lack sufficient particularity; 5) the complaints fail to state a cause of action for money laundering forfeiture because neither transportation of stolen property nor mail fraud is a "specified unlawful activity" within the terms of 18 U.S.C. § 1956; 6) due to the constitutional violations, the complaints should be dismissed without leave to amend, and the property should be returned.

The government responds that: 1) claimants' motion for a more definite statement and their arguments regarding lack of particularity are without merit because the Sauter affidavit, which is incorporated in the complaints, is sufficiently particular; 2) the motions should be denied as premature because they concern matters outside the complaint which should be handled through a motion for summary judgment; 3) it was not necessary to conduct an adversary hearing before seizure because the arrest

warrant procedure satisfies the requirements of due process; 4) the claimants misinterpret the statutes defining the offenses which may be the basis for a money laundering civil forfeiture; 5) the motion for return should be denied because 28 U.S.C. § 2465 mandates return only when there is no forfeitable interest, and Rule 41(e) is not applicable in civil forfeiture actions.

## DISCUSSION

### 1. *Is the Motion Premature?*

■ The government contends that these motions are premature, since they rely on disputed matters outside of the pleadings which should be dealt with in a motion for summary judgment. While it is true that claimants have submitted affidavits which refer to the merits, much of the factual matter relates to the request for an expedited hearing, and to suggestions of bad faith by the government which are not tied to any particular legal theory. The constitutional, statutory and pleading issues raised by the claimants can be determined under Fed.R.Civ.P. 12 without going beyond the pleadings, and are appropriate for an early decision on a motion to dismiss. In deciding these motions I will consider only the matters incorporated in the pleadings.

### 2. *Lack of Particularity*

■ Claimants argue that despite the incorporation of the lengthy affidavit of Special Agent Sauter, the complaints lack the particularity required by the Supplemental Rules for Certain Admiralty and Maritime Claims. Rule E(2)(a) of the Supplemental Rules requires that a forfeiture complaint "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Where the complaint incorporates an affidavit, the facts in the affidavit may be used to meet the particularity requirement.

*United States v. One Parcel of Real Property,* 900 F.2d 470 (1st Cir.1990).

The complaints set out the alleged fraudulent scheme in fairly conclusory terms, tracking the language of the money laundering statute, 18 U.S.C. § 1956, and alleging that Gurs committed the following violations which are covered by the money laundering statute: interstate transportation of stolen property in violation of 18 U.S.C. § 2314; mail fraud in violation of 18 U.S.C. § 1341; and money laundering in violation of 18 U.S.C. § 1956. The complaints allege that Gurs knew that his transactions were designed in whole or in part to conceal or disguise the nature, source, ownership or control of the proceeds of his unlawful activities.

The 75 page Sauter affidavit provides a great deal of factual detail regarding the basis for forfeiture, including the details of the fraudulent scheme which Gurs is alleged to have carried out, the sources of Gurs' funds, the use of fraudulently obtained funds to obtain the defendant properties, and the role of the defendant properties in the fraudulent scheme.

The claimants allege that even with the incorporation of the Sauter affidavit the complaint is inadequate because it fails to disclose the identity of each investor and property involved, and how each investor and property was affected by the fraudulent scheme. Although the Sauter affidavit is lengthy, it does not identify each of the 170 investors and 140 properties allegedly involved in the scheme.

However, the complaints and affidavit, taken together, are adequate to permit the claimants to investigate and frame a responsive pleading. The complaints indicate the nature of the fraudulent scheme alleged, and trace the funds that went into the defendant properties, providing the essential basis for forfeiture of these properties if the allegations of the fraudulent scheme are proved. In contrast, the complaint which was disapproved in *United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1221–22 (10th Cir.1986), made only very vague references to a connection with narcotics transactions.

I find that the complaints meet the particularity requirement of Supplemental Rule E(2)(a).

### 3. *Constitutional Issues*

■ Claimants contend that the seizure of the four properties violated their constitutional right to due process. This argument has two prongs. First, claimants contend that the sole purpose of these forfeiture actions was to freeze their assets in aid of a planned criminal prosecution without affording due process. Second, claimants contend that the failure to provide notice and a hearing prior to the seizure of the properties violated their right to due process.

In support of their first argument, claimants rely on cases regarding criminal forfeiture. These cases are inapplicable for several reasons. The courts recognize that there are distinctions between civil forfeiture and criminal forfeiture, and that some of the protections available in criminal forfeiture actions are not present in civil forfeiture actions. *United States v. Tax Lot 1500*, 861 F.2d 232, 234–35 (9th Cir.1988), *cert. denied*, 493 U.S. 954, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989) (proportionality requirement of Eighth Amendment not applicable in civil forfeiture cases). *See also United States v. 57,261 Items of Drug Paraphernalia*, 869 F.2d 955, 959 (6th Cir.), *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989) (where both civil and criminal forfeiture statutes applied to the importation of drug paraphernalia, neither statute was exclusive and government could choose to proceed under the civil forfeiture provision, despite the existence of a related criminal case against the claimant).

Claimants have cited no Ninth Circuit or Supreme Court authority which requires the government to choose criminal forfeiture rather than civil forfeiture. Claimants rely heavily on *United States v. $39,000 in Canadian Currency, supra*, 801 F.2d 1210, a Tenth Circuit civil forfeiture case based on violations of customs laws regarding the importation of large amounts of currency. The issue before the Tenth Circuit in *$39,000* was whether the complaint for forfeiture was sufficiently particular. The Tenth Circuit held that the allegations of the complaint were not adequate, and rejected the argument of the government that greater detail would jeopardize an ongoing criminal investigation of the claimant. *Id.* at 1218.

The Tenth Circuit recognized the distinctions between criminal forfeiture (*in personam*) and civil forfeiture (*in rem*), and stated in *dicta* its concern over the use of pre-indictment restraints on assets. The court stated:

> In imposing rigorous standards upon the issuance of pre-indictment restraints on assets, Congress recognized that the Government bears a heavy burden when it focuses its law enforcement energies and resources upon a person and attempts to restrain his property prior to the filing of an indictment or information. The Act [criminal forfeiture] and its legislative history dictate that, in such circumstances, criminal rather than civil forfeiture procedures are appropriate.

801 F.2d at 1219. The Tenth Circuit also stated: "Although the issue is not squarely presented in this case, the wholesale use of civil forfeiture proceedings causes us grave concern when the Government has clearly focused its law enforcement energies and resources upon a person and attempts to restrain his property in anticipation of formal criminal proceedings." *Id.* at 1219 n. 7. While this language does indicate some appropriate concerns, the Tenth Circuit did not base its ruling on these grounds, and I have not located any authority which would require the government to pursue criminal forfeiture when civil forfeiture procedures are available.

■ Claimants contend that the sole purpose for these forfeiture actions is to freeze Gurs' assets in aid of a planned criminal prosecution, and intimate that the underlying purpose of the forfeiture is to harass Gurs and cripple his defense. However, another, legitimate reason for the forfeiture actions appears on the face of the pleadings. The complaints allege that the four properties were transferred to Larson,

and subsequently retransferred to trusts controlled by Larson. Neither Larson nor the trusts have been identified as a subject of the criminal investigation. Thus, criminal forfeiture would reach only Gurs' interest in the properties, and would not determine the interests of Larson and the trusts.

The criminal forfeiture cases cited by the claimants are also inapposite for other reasons. In *United States v. Crozier*, 777 F.2d 1376 (9th Cir.1985), the court considered the adequacy of specific procedures for obtaining restraining orders set out in 21 U.S.C. § 848 (forfeiture of the profits of a continuing criminal enterprise) and 21 U.S.C. § 853(e) (narcotics forfeiture). These statutes have since been amended in some respects. Furthermore, *Crozier* did not require a pre-seizure hearing if the claimant was afforded an opportunity to be heard at a meaningful time and in a meaningful manner following the seizure. 777 F.2d at 1383. In the subsequent criminal forfeiture case of *United States v. Roth*, 912 F.2d 1131, 1133 (9th Cir.1990), the Ninth Circuit approved an *ex parte* restraining order issued prior to seizure where the claimant was given a prompt hearing after seizure.

■ Claimants also rely on civil forfeiture cases from other circuits which indicate that the seizure of a claimant's home without prior notice and hearing violates due process. In *United States v. Property at 4492 S. Livonia Rd.*, 889 F.2d 1258, 1965 (2d Cir.1989), the Second Circuit held that the *ex parte* seizure of the claimant's home under the narcotics forfeiture statute violated due process because the balance of factors weighed in favor of the claimant's substantial interest in his home. The court indicated that the government's interest in preventing transfer or encumbrance could be met by the issuance of a restraining order rather than actual seizure. However, the court found that the eventual forfeiture of the property was proper because it was based on untainted evidence. *Id.* at 1265–66. The court did not indicate how it would have handled a motion for return at the outset of the case.

In *United States v. a Parcel of Land*, 937 F.2d 98, 101 (3d Cir.1991), the Third Circuit agreed with *South Livonia* that the seizure of a claimant's home without notice or hearing "may have been unlawful," but found that the forfeiture action need not be dismissed if probable cause for forfeiture was shown by untainted evidence. The Third Circuit did not discuss the reasons that the seizure might be unconstitutional or whether return of the seized property was an appropriate remedy. As in this case, the claimant remained in the home under an occupancy agreement with the government.

No Ninth Circuit authority has been cited which finds that the *ex parte* seizure of a home violates due process. To the contrary, in *Tax Lot 1500, supra*, the Ninth Circuit upheld the civil forfeiture of the claimant's home without pre-seizure notice or hearing. The court held that any possible constitutional defects were cured by the procedure of securing prior judicial review to determine probable cause for forfeiture before issuance of the arrest warrant. 861 F.2d at 235.

In the face of this direct and binding Ninth Circuit precedent, I cannot adopt the approach used by the Second and Third Circuits. None of the arguments raised by the claimants adequately distinguishes *Tax Lot 1500*. Claimants contend that while the narcotics violations in *Tax Lot 1500* were simple to understand, the complicated allegations in this case are not suitable for *ex parte* review. Claimants rely on *Pinsky v. Duncan*, 898 F.2d 852, 855–56 (2d Cir. 1990), a civil tort case regarding *ex parte* pretrial attachment procedures.

The claimants do not adequately distinguish the holdings of the Supreme Court in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 677, 94 S.Ct. 2080, 2088, 40 L.Ed.2d 452 (1974), and *United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 562 n. 12, 103 S.Ct. 2005, 2011 n. 12, 76 L.Ed.2d 143 (1983), that the government's seizure of items subject to civil forfeiture constitutes an extraordinary situation justifying seizure without a prior hearing. These cases concerned a narcotics forfeiture un-

der the law of Puerto Rico, and a customs forfeiture under federal law. The Supreme Court emphasized the ancient common law origin of *in rem* forfeiture, and did not suggest any basis for distinctions between various grounds for civil forfeiture. 416 U.S. at 685–86, 94 S.Ct. at 2092–93.

Although the claimants have raised some troubling issues, the Ninth Circuit and Supreme Court authorities binding on this court uphold the use of seizure without prior notice or hearing in civil forfeiture cases. None of the authorities cited by the claimants compels a different result in this case.

### 4. *Statutory Interpretation*

■ The complaints in these cases seek civil forfeiture based on 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of "any property, real or personal, involved in a transaction or attempted transaction in violation of ... section 1956 ... of this title, or any property traceable to such property." Section 1956 of Title 18 is the money laundering statute, which penalizes:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or

(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law.

Section 1956(c)(7) defines specified unlawful activity as (in relevant part):

(A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31;

\* \* \* \* \* \*

(D) an offense under ... section 1341 (relating to mail fraud) or section 1343 (relating to wire fraud) affecting a financial institution.

Section 1961(1) defines racketeering activity, and includes mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and interstate transportation of stolen property under 18 U.S.C. § 2314.

Claimants argue first that the complaint fails to plead a violation covered by the money laundering statute. Claimants argue that the mail fraud pleaded in the complaint is inadequate, because § 1956(c)(7) applies only to mail fraud affecting a financial institution. Claimants contend that although mail fraud and interstate transportation of stolen property are listed in 18 U.S.C. § 1961(1), the complaint cannot simply allege those offenses, but must state a complete violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). It is undisputed that the complaint does not alleged mail fraud affecting a financial institution, and that the complaint does not state a violation of RICO.

The parties have argued at length regarding the meaning of the legislative history relating to a recent amendment which added the phrase "affecting a financial institution" to 18 U.S.C. § 1956(c)(7)(D). However, it is not necessary to reach this issue, because section 1956(c)(7)(A) provides an adequate basis for money laundering violations in this case. The government has alleged violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 2314 (interstate transportation of stolen property), which are listed in 18 U.S.C. § 1961. Section 1956 states that the term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of this title." 18 U.S.C. § 1956(c)(7)(A).

On its face, section 1956 does not require a full RICO violation, which is defined in 18 U.S.C. § 1962, but merely one or more of the offenses listed in section 1961. In order to state a full RICO violation, one must allege a racketeering enterprise and a pattern of racketeering activity which includes more than one violation of the offenses listed in section 1961. 18 U.S.C. § 1962. Thus, if Congress had intended to require a full RICO violation as a predicate for a money laundering charge, it could simply have referred to a violation of section 1962, rather than to "an offense listed in section 1961(1)." 18 U.S.C. § 1956(c)(7)(A).

■ The plain meaning of a statute controls, absent clear legislative intent to the contrary. *United States v. Dadanian*, 818 F.2d 1443 (9th Cir.1987), *modified on reh'g*, 856 F.2d 1391 (9th Cir.1988). In this case, claimants have not provided any authority or legislative history suggesting that Congress intended to require a full RICO violation as the prerequisite for a money laundering charge, aside from a few references to organized crime and narcotics trafficking. Moreover, the claimants ignore the fact that narcotics trafficking is a basis for money laundering charges only through subsection (c)(7)(A), which relies on the inclusion of narcotics offenses in 18 U.S.C. § 1961(1). Thus, under the logic used by the claimants, narcotics trafficking would not provide a basis for a money laundering charge unless it met the requirements for a full RICO violation. There is no support for this proposition in the legislative history of section 1956 or the cases decided under it.

■ Claimants also argue that the complaints fail to state a money laundering violation because there are no allegations that Gurs engaged in transactions designed to conceal the nature, location, source, ownership or control of the proceeds of his unlawful activity as required by section 1956(a)(1)(B)(i). Claimants concede that the complaints track the statutory language, but contend that there are no facts alleged which could support a finding of concealment.

Claimants rely on two related Tenth Circuit decisions, *United States v. Sanders*, 929 F.2d 1466 (10th Cir.1991), and *United States v. Sanders*, 928 F.2d 940 (10th Cir. 1991), in which two cars were purchased with proceeds from drug sales. The title for one of the cars was put into the name of the daughter of the drug traffickers. The Tenth Circuit held that the purchases of the two cars did not support a money laundering conviction because they were straightforward transactions which did not evidence a design to conceal the identity or the source of the proceeds. 928 F.2d at 946.

However, this case is distinguishable from the *Sanders* cases, because the government has alleged facts that could support a finding of intent to conceal the source, ownership or control of the funds put into the defendant properties. The complaints allege that the defendant properties have been transferred twice since coming into Gurs' possession, first to Larson, and then to the Larson trusts. The fact that the government was able to track the properties through this series of transactions does not prevent an inference that the transactions were intended to conceal the nature, source or ownership of the properties.

Accordingly, I find that the government has adequately alleged claims for money laundering forfeiture under 18 U.S.C. § 981.

### 5. *Motion for Return*

■ Claimants move for return of the defendant properties under 28 U.S.C. § 2465 and under Fed.R.Cr.Proc. 41(e). Section 2465 provides for the return of property only upon entry of judgment for the claimant in a forfeiture proceeding. As discussed above, the government has alleged a basis for forfeiture of the defendant properties, so that return under section 2465 would not be appropriate at this stage of the proceedings.

■ Moreover, Rule 41(e) is not applicable in civil forfeiture cases. Subsection (b)(5) of Fed.R.Cr.Proc. 54 specifically states that "[t]hese rules are not applicable

to ... civil forfeiture of property." The Ninth Circuit has held that when civil forfeiture proceedings have been commenced, a motion for return under Rule 41(e) is not appropriate and must be dismissed. *United States v. $83,310.78,* 851 F.2d 1231, 1233 (9th Cir.1988). The Sixth, Eighth, Tenth, Eleventh and D.C. Circuits also follow this rule. *See, e.g., Shaw v. United States,* 891 F.2d 602 (6th Cir.1989).

In any event, Rule 41(e) would not provide relief at this stage of the case, because claimants have not shown a constitutional violation or other basis for dismissal.

## CONCLUSION

The motions of the claimants to dismiss these consolidated cases and for the return of seized property are denied.