Felix HERNANDEZ, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 99 CIV 4303 (SAS).

United States District Court,
S.D. New York.

Feb. 22, 2000.

Felix Hernandez, Fort Dix, NJ, pro se.

Meredith Kotler, Assistant United States Attorney, United States Attorney's Office, Southern District of New York, New York, NY, for United States of America.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

This opinion represents the final stop on a twisted journey through the netherworld of administrative forfeiture. In 1992, the Drug Enforcement Administration ("DEA") seized plaintiff Felix Hernandez's car in connection with his arrest on federal narcotics charges. Three years later, the DEA and United States Attorney's Office notified Hernandez that they were declining to prosecute a judicial forfeiture proceeding and were returning the car to him. The twist is that, during those three years, the DEA added the car to its fleet and drove it more than 10,000 miles.

Hernandez's wife finally retrieved the car in 1997, but Hernandez, proceeding *pro se*, now seeks damages for the government's unauthorized use of, unauthorized retention of, and physical damage to the car. Although the government has agreed to pay for the physical damage and to compensate Hernandez for its unauthorized use of his car, the parties dispute the proper method for determining that compensation, as well as whether the government is liable for damages stemming from its retention of Hernandez's car. In addition, Hernandez seeks interest on the cost bond that he had to post in order to file a claim.

Both parties have filed motions for summary judgment. For the reasons set forth below, summary judgment is granted in favor of Hernandez, who is awarded $742.62 for the government's unauthorized use of and physical damage to his car, as well interest on the overstated value of the cost bond. Hernandez is awarded no damages for the retention of his car.[1]

## I. BACKGROUND

### A. Facts

Felix Hernandez's Toyota Camry sedan 4D Model No. V24E (the "car") was seized

---

1. On February 8, 2000, this Court issued an oral opinion granting summary judgment in favor of Hernandez and awarding him $2,522. That opinion is withdrawn and replaced by this amended opinion.

in connection with his August 1992 arrest on federal narcotics charges. *See* Amended Declaration of Steve Kaufman, Senior Attorney with the DEA ("Am. Kaufman Decl.") at ¶ 6 (attached as Exhibit A to the Declaration of Assistant U.S. Attorney Meredith E. Kotler, dated January 24, 2000 ("Second Kotler Decl.")). On September 8, 1992, the DEA commenced administrative forfeiture proceedings against the car, published notice of the seizure in USA Today, and sent notice of the forfeiture proceedings to Hernandez. *See id.* at ¶¶ 8–10. The notice advised Hernandez that if he wished to contest the forfeiture, he must file a claim and post a bond in the amount of ten percent of the DEA's valuation of the car at the time it was seized.[2] *See id.* at ¶ 10. On October 23, 1992, having received no timely claim or cost bond, the DEA administratively forfeited the car to the United States, and added the car to the government fleet. *See id.* at ¶¶ 12–13; *see also* 19 U.S.C. § 1609 (permitting summary forfeiture in the absence of a timely claim); 21 U.S.C. § 881(e) (describing options for disposition of forfeited property); 21 C.F.R. § 1316.77(a) (forfeited property may be retained for official use).

In July 1993, the DEA discovered that the 1992 notice of forfeiture was defective in that both the Vehicle Identification Number ("VIN") and model year were incorrect. *See* Am. Kaufman Decl. at ¶ 14. As a result, the DEA rescinded the forfeiture and removed the Camry from the government fleet. *See id.* at ¶¶ 14–15. The government added 10,298 miles to the car. *See id.* at ¶ 15.[3]

On August 18, 1993, the DEA recommenced forfeiture proceedings against the car and again published and sent notice to Hernandez. *See id.* at ¶¶ 16–17. Having failed to receive a timely claim, the DEA forfeited the car again on October 1, 1993.

*See id.* at ¶ 19. Three days later, however, a claim and bond were filed by Trevor Reid, Esq. on behalf of Hernandez. *See id.* at ¶ 20. As a result, on October 12, 1993, the forfeiture was rescinded. *See id.* at ¶ 22.

The matter then was referred to the United States Attorney's Office for initiation of judicial forfeiture proceedings. *See id.* at ¶ 21. By letter dated October 26, 1995, the United States Attorney advised Hernandez that prosecution of the judicial forfeiture proceeding had been declined, and the car could be retrieved. *See id.* at ¶ 24. For the next year Hernandez and the DEA disputed the issue of storage charges. *See id.* at ¶¶ 24–25. On October 1, 1996, the DEA agreed that it would waive storage charges and that Hernandez could reclaim the car. *Id.* at ¶ 26. Hernandez refused to accept the car unless the DEA agreed to reimburse him for its loss in value. *See id.* at ¶ 27. Finally, having received notice that the car would be considered abandoned, Hernandez' wife retrieved the car in July 1997. *See id.* at ¶ 29.

### B. Procedural History

In late 1996, Hernandez filed a Petition, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, seeking the return of his car and damages. *See* Complaint, Claim for Property Damage(s) in the Amount of $19,650.00 Pursuant to the Federal Tort Claim Act ("FTCA") 28 USC § 1346 ("Complaint") at 2 (explaining that Hernandez initially filed a "Petition for Return of Property in the full and fair market value pursuant to Civil Equitable Proceeding or Rule 41(e) of Federal Rules of Criminal Procedure"); *see also Hernandez v. United States Drug Enforcement Administration,* No. 97 Civ. 0429(SAS). By Stipulation and Order dated August 11, 1997, the motion was dismissed without prejudice to allow Hernandez to pursue his

---

**2.** The DEA agent valued the car at $18,500, and the amount of the bond was $1,850. *See* Exhibit 1 to Defendant's Notice of Motion.

**3.** It also appears that a side mirror was damaged during the time the government used the car.

administrative remedies. *See* Complaint at 2.

On August 27, 1997, Hernandez filed a Standard Form 95, Claim for Damage, Injury, or Death seeking $19,650 for property damage. *See id.* at 3. Specifically, Hernandez sought (1) $14,300 for loss in the property value of his car; (2) $350 for damage to the side mirror; and (3) $5,000 for "Hardship as a result of the Unconstitutional use of property." *See* Declaration of Steve Kaufman, Senior Attorney with the DEA, dated November 24, 1999 ("Kaufman Decl.") at ¶ 12 (attached as Exhibit A to the Declaration of Assistant U.S. Attorney Meredith E. Kotler, dated November 24, 1999 ("First Kotler Decl.")). By letter dated June 4, 1998, the DEA offered Hernandez $1,075 in full and final settlement of his claim. *See* Am. Kaufman Decl. at ¶ 31. Hernandez rejected this offer. *See id.* at ¶ 38.

On June 15, 1999, Hernandez filed the instant action, seeking $19,650 in damages, based on the loss in retail value of his car over time, damage to the car's side mirror, and "punitive damages for cost and expenses incurred due to hardships resulting from DEA's unconstitutional use, and unnecessary long retention of property without Due Process." *See* Complaint at 4.

## II. DISCUSSION

Although the facts of this case are relatively simple, the legal analysis is unexpectedly complex. First, the Court must establish a method by which it had jurisdiction to hear Hernandez's complaint. Then, the Court must determine, within the confines of that jurisdiction, what it can award Hernandez for his loss. Because this case does not present genuine issues of material fact, resolution at the summary judgment stage is appropriate. *See Mitchell v. Washingtonville Central School District,* 190 F.3d 1, 5 (2d Cir.1999) ("While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e.,

whether it concerns facts that can affect the outcome under the applicable substantive law. A reasonably disputed, legally essential issue is both genuine and material and must be resolved at trial.") (quotation marks and citations omitted).

### A. Jurisdiction

Establishing jurisdiction in this case is no easy matter. Hernandez moves this Court pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, but that avenue is unavailing. Because Hernandez is proceeding *pro se,* this Court will look for other methods of establishing jurisdiction. After an exhaustive search, detailed below, Federal Rule of Criminal Procedure 41(e) offers the only viable path.

#### 1. The Federal Tort Claims Act

The FTCA provides that a district court shall have exclusive jurisdiction over civil actions against the United States, seeking money damages only, arising out of the negligent or wrongful acts or omissions of any employee of the government, while acting within the scope of his or her employment. *See* 28 U.S.C. § 1346(b). Hernandez claims that the DEA breached its duty of care by improperly using and damaging his car, but he offers no support for this claim other than citations to New York law on negligence.

The government argues, correctly, that the FTCA does not provide a waiver of sovereign immunity for claims stemming from the detention of goods by law enforcement officers. *See* 28 U.S.C. § 2680(c) (stating that FTCA shall not apply to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer"); *see also Kosak v. United States,* 465 U.S. 848, 851–62, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) (holding that the FTCA does *not* cover suits alleging that customs officials injured property that had

been detained). While there are a number of cases in this District and Circuit applying the holding of *Kosak* and the exclusion of section 2680(c), none relate to the seizure of automobiles. *See, e.g., Haughton v. Federal Bureau of Investigation,* No. 98 Civ. 3418(BSJ), 1999 WL 1133346, at *6 (S.D.N.Y. Dec. 10, 1999) (lost bonds); *Schreiber v. United States,* No. 96 Civ. 0122(KMW), 1997 WL 563338, at *4–7 (S.D.N.Y. Sept. 8, 1997) (vases and bowls); *U–Series Int'l Services, Ltd. v. United States,* No. 94 Civ. 2733(MBM), 1995 WL 671567, at *5 (S.D.N.Y. Nov. 7, 1995), *aff'd,* 104 F.3d 355 (2d Cir.1996) (electronics).[4] Nonetheless, where, as here, plaintiff claims that his property has been damaged while detained by the government, the rule of *Kosak* and the exclusion of section 2680(c) must apply. *See Cheney v. United States,* 972 F.2d 247, 248 (8th Cir.1992) (plaintiff's claim that government returned his forfeited car to the wrong person "falls within section 2680(c)'s broad exception to the FTCA's general waiver of sovereign immunity").[5]

### 2. The Tucker Act

Hernandez alleges that he was deprived of his property without due process of law. *See* Complaint at 4; Plaintiff's Response in Objection to Defendant's Motion for Summary Judgment ("Pl.Resp.") at 6 ("DEA's unauthorized use and unnecessary retention of plaintiff['s] property ... violated plaintiff's constitutional rights to possess, and to the unlimited use of his property."). Because he is appearing *pro se,* I shall assume, arguendo, that Hernandez pled a claim pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2). The Supreme Court

has held that the Tucker Act waives sovereign immunity as to substantive rights found in other sources of law (specifically the Constitution, an Act of Congress, any regulation of an executive department, an express of implied contract with the United States), but does not itself create any substantive rights. *See United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Accordingly, in order for this Court to have jurisdiction under the Tucker Act, Hernandez must point to a source of law that provides for the award of damages or depreciation of seized property or accumulated interest on his cost bond.

 Hernandez cannot meet this requirement. *First,* money damages for constitutional violations are not available against the federal government. *See Polanco v. United States Drug Enforcement Administration,* 158 F.3d 647, 651 (2d Cir. 1998) (claimant alleging procedurally inadequate forfeiture cannot sue DEA for damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)) (citing *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 484– 86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). *Second,* Congress has not waived sovereign immunity for prejudgment interest on seized property or returned cost bonds. *See Ikelionwu v. United States,* 150 F.3d 233, 239 (2d Cir.1998) (holding that there was "no statutory basis for awarding prejudgment interest" where government had to return seized currency); *United States v. $7,990 in United States Currency,* 170 F.3d 843, 846 (8th Cir.1999) (holding that person seeking return of seized property

---

**4.** *Cf. Formula One Motors, Ltd. v. United States,* 777 F.2d 822, 823–24 (2d Cir.1985) (applying section 2680(c) and *Kosak* to claim for damages resulting from destruction of automobile during the execution of a search and seizure warrant).

**5.** I note that even if the Federal Tort Claims Act applied, punitive damages would not be available. *See* 28 U.S.C. § 2674 (stating that, under the FTCA, the United States "shall not

be liable ... for punitive damages"); *see also Caballero v. Anselmo,* 759 F.Supp. 144, 153– 54 (S.D.N.Y.1991) (punitive damages for conversion of personal property justified only where "malice, insult, reckless and willful disregard" are shown; act done "maliciously when it is done deliberately with knowledge of the plaintiff's rights and with the intent to interfere therewith"). Hernandez has not made this showing.

had "no statutory or contractual claim to an award of interest"), *cert. dismissed,* —— U.S. ——, 120 S.Ct. 577, 145 L.Ed.2d 449 (1999); *see also Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) ("In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award.").

### 3. 28 U.S.C. § 2465

A third possible avenue of jurisdiction is 28 U.S.C. § 2465, which states:

> Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.

Courts have held that, where the seizure was based on reasonable cause, Congress has not waived sovereign immunity under § 2465 for claims seeking the depreciation in the value of the seized property. *See United States v. One 1979 Cadillac Coupe De Ville,* 833 F.2d 994, 998–1001 (Fed.Cir. 1987) ("Nothing in the legislative history of section 2465 indicates or even suggests that Congress there intended to subject the United States to liability for the depreciation of a properly seized vehicle while in

government custody."); *United States v. Silvers,* 932 F.Supp. 702, 704–05 (D.Md. 1996) (noting finding of reasonable cause), *aff'd,* 106 F.3d 394 (7th Cir.1997).

■ Hernandez cannot establish jurisdiction under § 2465. First, assuming arguendo that the DEA's initial administrative forfeiture proceedings constitute the "proceedings" referred to in the statute, that proceeding did not result in a judgment in Hernandez's favor. Moreover, although he contends that the initial proceedings were defective because the DEA failed to provide adequate notice, Hernandez does not argue that the government lacked reasonable cause to seize his car at the time of his arrest. Indeed, the record supports a finding that the government had reasonable cause to seize Hernandez's car. *See* Kaufman Decl., Ex. 1 (explaining that the keys to the car were discovered in Hernandez's apartment, Hernandez admitted that he owned the car and that he had paid cash for it); *United States v. One 1986 Ford Pickup,* 56 F.3d 1181, 1186 (9th Cir.1995) (" 'Reasonable cause' within the meaning of section 2465 is essentially synonymous with probable cause.") (citing *Stacey v. Emery,* 97 U.S. 642, 646, 24 L.Ed. 1035 (1878)).[6]

### 4. The Administrative Procedure Act ("APA")

■ Although not explicitly raised by Hernandez, the usual basis for injunctive relief against the United States is found in the APA. *See* 5 U.S.C. § 702 (1988). "Section 702 waives sovereign immunity in an action seeking equitable relief from wrongful agency action, except where (i) the

---

6. In addition, it is not clear whether the government's decision to decline prosecution of the forfeiture constitutes an "entry of judgment for the claimant" sufficient to trigger § 2465. *See United States v. Brazier,* No. 93–40003–08–SAC, 1995 WL 646798, at *1 (D.Kan. Sept. 26, 1995) (explaining that party should have brought claim under Federal Rule of Criminal Procedure 41(e), which "authorizes a motion for return of seized property," not § 2465, which is for the "enforce-

ment of a judgment rendered"); *see also United States v. Real Property Commonly Known as 16899 S.W. Greenbrier,* 774 F.Supp. 1267, 1274 (D.Or.1991) ("Section 2465 provides for the return of property only upon entry of judgment for the claimant in a forfeiture proceeding."). Because Hernandez does not challenge the government's reasonable cause to seize his car, however, the Court need not reach that question.

action also seeks monetary relief; (ii) there is an adequate remedy at law; or (iii) the action is precluded from judicial review by statute or committed by law to agency discretion." *See Polanco,* 158 F.3d at 652. In this case, not only is Hernandez seeking monetary relief, he also was provided a remedy in the forfeiture proceedings instituted by the government against his vehicle. *See Wright v. United States,* 902 F.Supp. 486, 488 (S.D.N.Y.1995) (no jurisdiction under APA where "plaintiff has a remedy available in the forfeiture proceeding instituted by the government against his vehicles").

### 5. Federal Rule of Criminal Procedure 41(e)

■ The final possible avenue of jurisdiction is Federal Rule of Criminal Procedure 41(e), under which Hernandez initially brought suit. *See* Complaint at 2. Rule 41(e) states:

A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

Fed.R.Crim.P. 41(e). The Second Circuit has explained that, in cases like this one, Rule 41(e) provides a basis for jurisdiction:

We have held that a district court where a defendant is tried has ancillary jurisdiction to decide a defendant's post-trial motion for the return of seized property.

Where criminal proceedings are no longer pending against the defendant such motion is treated as a civil equitable proceeding even if styled as being pursuant to Fed.R.Crim.P. 41(e). Simply because the government destroys or otherwise disposes of property sought by the movant, the motion for its return is not thereby rendered moot. Where a court possessing equitable powers has jurisdiction over a complaint that seeks equitable relief, it has authority to award whatever damages are incident to the complaint.

*Soviero v. United States,* 967 F.2d 791, 792–93 (2d Cir.1992); *see also Rufu v. United States,* 20 F.3d 63, 65 (2d Cir.1994); *Mora v. United States,* 955 F.2d 156, 158–60 (2d Cir.1992). The government concedes that Rule 41(e) is the proper basis for jurisdiction in this case. *See* Government's Memorandum of Law in Support of its Motion for Summary Judgment ("Gov. Mem.") at 6–7 n. 3.

### B. Damages

Now that the Court has jurisdiction under Rule 41(e) to hear Hernandez's claim, I turn to the issue of damages. The government has returned the car to Hernandez and has conceded that it must pay him for some physical damage to the car. Nevertheless, the parties dispute both the scope of allowable damages in this case and the proper measure of damages that are conceded. Resolution of these disputes requires an exploration of the breadth of the Court's powers under the ancillary equitable jurisdiction conferred by Rule 41(e).

In his complaint, Hernandez seeks: (1) $350 in physical damage to the car (for a broken mirror); (2) compensation for the 10,289 miles added to the car by the government; (3) compensation for the lost use of his car between 1992 and 1996; (4) punitive damages of $5000; and (5) accrued interest on the bond money. The government has agreed to pay $350 for the broken mirror and has agreed to compen-

sate Hernandez for the mileage added to his car. The parties disagree, however, on the proper amount of compensation for those miles. In addition, the government argues that Hernandez is not entitled to damages for the lost use of his car, punitive damages, or interest on the bond money.

### 1. Damage to Mirror

■ The government must pay Hernandez $350 for the broken mirror, as it has agreed to do. Indeed, this is exactly the type of "damages ... incident to the complaint" that this Court should award under *Soviero*. Simply put, the government has damaged Hernandez's car and, unless it pays him for that damage, it will not be returning to him the exact same car that it seized. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) ("[I]t is the historic purpose of equity to secure complete justice.") (quotation marks and citation omitted); *Soviero*, 967 F.2d at 793 ("When a court possessing equitable powers has jurisdiction over a complaint that seeks equitable relief, it has authority to award whatever damages are incident to the complaint.").

### 2. Compensation for Loss in Value of Car

Hernandez seeks compensation for the loss in the value of his car while in government custody. Three calculations of the value of Hernandez's car are relevant to this case:

· In August 1992, when the DEA seized Hernandez's car—a 1990 Toyota Camry sedan 4D Model No. V24E [7]—it had a base retail value of $9,550. *See* N.A.D.A. Official Used Car Guide (August 1992) (attached as Exhibit 3 to Am. Kaufman Decl.).[8] In addition, because the car only had 32,461 miles on it at the time of the seizure, it received a low mileage premium of $250. *See id.* That gave the car a total retail value of $9,800 in August 1992.

· In October 1996, when the DEA told Hernandez that he could reclaim the car, it had a base retail value of $6,550. *See* N.A.D.A. Official Used Car Guide (October 1996) (attached as Exhibit 4 to Am. Kaufman Decl.). In addition, because the car had 42,750 miles on it in October 1996, it received a low mileage premium of $1,175. *See id.* That gave the car a total retail value of $7,725 in October 1996.

· If the government had not added any miles to Hernandez's car, it would have had the same base retail value of $6,550 in October 1996. *See id.* The low mileage premium, based on 32,461 miles rather than 42,750 miles, would have totaled $1,475. *See id.* As a result, if the government had not added any miles to Hernandez's car, it would have had a total retail value of $8,025 in October 1996.

The loss in the value of Hernandez's car is the product of two different causes. One part of the loss is the additional miles put on the car by the government; the value of that loss is $300, which is the difference between the 1996 retail value with and without the extra miles. The other part of the loss is normal depreciation over time; the value of that loss is $1,775, the difference between the 1992 and 1996 retail value, which totals $2,075, less the $300 for the additional miles.

---

7. The government initially thought Hernandez's car was a different model. *See* Am. Kaufman Decl. at ¶¶ 35–37. There is no dispute that Hernandez's car is a 4-door sedan Model No. V24E.

8. One source of confusion in this case is that the DEA initially valued Hernandez's car at $18,500. *See* Complaint, Ex. 1. The government explains that this was an error, which Hernandez does not dispute. *See* Statement Pursuant to Local Civil Rule 56.1, at ¶ 16. Accordingly, there is no basis for Hernandez's claim that he is entitled to the difference between the DEA's erroneous valuation of his car in 1992 and the actual retail value of his car in 1996.

### a. Loss attributable to the additional miles

■ The government must compensate Hernandez for the loss in the value of his car attributable to the additional miles. Those additional miles are analogous to the broken mirror, and compensating Hernandez for those miles ensures that the government makes him whole. *See Albemarle Paper,* 422 U.S. at 418, 95 S.Ct. 2362 ("[I]t is the historic purpose of equity to secure complete justice."); *Soviero,* 967 F.2d at 793 ("When a court possessing equitable powers has jurisdiction over a complaint that seeks equitable relief, it has authority to award whatever damages are incident to the complaint.").

### b. Loss attributable to depreciation

■ The government is not required to compensate Hernandez for the loss in the value of his car attributable to depreciation. The Second Circuit cases discussing ancillary equitable jurisdiction all focus on damages caused by the government. *See Soviero,* 967 F.2d at 793 ("On remand, the district court should receive evidence with respect to the value of the [destroyed property] and the circumstances of its destruction. Appellant should be permitted to seek damages if the district court determines the government's conduct renders it liable for such."); *see also Rufu,* 20 F.3d at 65 (remanding for factual findings "to identify any items still in the possession of the Government and any items that might have been lost"); *Mora,* 955 F.2d at 158–59 (remanding for "[a] finding of whether the government actually retains possession of Mora's property and, if not, what happened to it"); *United States v. Farese,* No. 80 Cr. 063(MJL), 1989 WL 74963, at *5 (S.D.N.Y. June 26, 1989) (awarding "the fair market value of the unreturned property"). The passage of time, not the sei-

zure by the government, caused the value of Hernandez's car to depreciate.[9]

Some courts have awarded depreciation in the value of a seized car under the Tucker Act. *See Powell v. Drug Enforcement Administration,* No. 95 Civ. 3214(LAP), 1999 WL 156353, at *2–6 (S.D.N.Y. Mar. 23, 1999); *United States v. One 1965 Chevrolet Impala Convertible,* 475 F.2d 882, 885 (6th Cir.1973). As detailed above, however, that avenue of relief is no longer available. *See* pp. 335–36 *supra.*

Other courts have held that a person cannot recover for the depreciation in the value of his seized asset under section 2465, if the government had reasonable cause for the seizure. *See One 1979 Cadillac,* 833 F.2d at 998 ("If Congress had intended the government not only to return the seized property but also to make the claimant whole for any depreciation in the value of the property during the period of government custody, it presumably would have so stated or indicated."); *Silvers,* 932 F.Supp. at 705 ("[S]ection 2465 provides a successful claimant only the return of his property, not the depreciation of the asset during the time it was in the control of the government.") (citing *One 1979 Cadillac* ).

### 3. Punitive Damages

■ The government is not required to pay Hernandez punitive damages, because punitive damages traditionally are not available in equity. *See Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (noting that actual and punitive damages are the "traditional form of relief offered in the courts of law"); *see also Tull v. United States,* 481 U.S. 412, 422, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (citing *Curtis* for the proposition that "punitive damages remedy is legal, not equita-

---

9. Indeed, Hernandez is partially responsible for the passage of time, because he: (1) failed to respond to the initial forfeiture notice; (2) responded late to the second forfeiture notice; (3) refused to pick up his car unless the gov-

ernment agreed to his terms; and (4) only retrieved the car after the government informed him that it would be considered abandoned. *See* pp. 332–33 *supra.*

ble, relief"). This conclusion finds support in the limitations on damages contained in both the FTCA and 28 U.S.C. § 2465. *See* 28 U.S.C. § 2674 (stating that, under the FTCA, the United States "shall not be liable ... for punitive damages"); 28 U.S.C. § 2465 ("[I]f it appears that there was reasonable cause for the seizure, ... the claimant shall not ... be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such prosecution.").

#### 4. Interest on Bond Money

 The government must pay Hernandez interest on the amount of the cost bond stemming from its erroneous valuation of his car at the time of its seizure. The DEA initially valued Hernandez's car at $18,500, resulting in a cost bond of $1,850. The proper valuation was $9,800, which would have resulted in a cost bond of $980. The Court recognizes that interest on cost bonds is not generally available, because the United States has not waived its sovereign immunity for prejudgment interest on seized property or returned cost bonds. *See $7,990 in United States Currency*, 170 F.3d at 846; *Ikelionwu*, 150 F.3d at 239. Nevertheless, Hernandez should receive interest on the amount of the cost bond attributable to the DEA's mistake—$870. *See Farese*, 1989 WL 74963, at *6 (where government was responsible for "a lack of diligence so extensive as to amount to misconduct," court awarded interest on entire amount of returned money because "an award of interest here is needed to secure complete justice"); *see also Albemarle Paper*, 422 U.S. at 418, 95 S.Ct. 2362 ("[I]t is the historic purpose of equity to secure complete justice.").

Although Hernandez seeks interest for three years at a rate of 7%, he offers no support for his contention that he could have received 7% on the money. The government, for its part, proposes an interest rate of 3.43%, which is the statutory interest rate in effect in September 1993. *See* 28 U.S.C. § 1961. Three years of cumulative interest on $870, at a rate of 3.43%, amounts to $92.62.

### III. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of plaintiff Felix Hernandez, who is awarded $742.62. The Clerk of the Court is directed to close this case.